Granovsky & Sundaresh PLLC
Benjamin Rudolph Delson (BD-1724)
Alexander Granovsky (AG-6962)
48 Wall Street / New York, NY 10005
delson@g-s-law.com
ag@g-s-law.com
(646) 524-6001

*Attorneys for Plaintiff Mohammad Chowdhury*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOHAMMAD CHOWDHURY, on behalf of himself and all other persons similarly situated, | Civil Action No.: |
| *Plaintiff,* | **COMPLAINT and JURY DEMAND** |
| v. | |
| RAJA 786 FOOD INC and RAJA S. ALI, individually, | |
| *Defendants.* | |

Plaintiff Mohammad Chowdhury, on behalf of himself and all others similarly situated, upon personal knowledge as to himself and upon information and belief as to other matters, by his attorneys, Granovsky & Sundaresh PLLC, as and for his Complaint against Defendants Raja 786 Food Inc. and Raja S. Ali, alleges as follows:

<u>**NATURE OF ACTION**</u>

1.      During the first frightening months of the pandemic, homemade signs hung all around Brooklyn, thanking frontline workers—and not just the doctors and nurses and EMTs who risked infection to tend to the sick, but also the restaurant workers and deliverymen who kept going to work so that others could shelter at home.

2.      This lawsuit is about some of those restaurant workers and deliverymen, and what they suffered through while they helped keep Brooklyn safe.

3.      The Domino's Pizza franchise located at the corner of Kings Highway and Rockaway Parkway in Brooklyn stayed open during the lockdown.  That franchise is owned by Defendant Raja Ali, through his company, Defendant Raja 786 Food Inc.

4.      Plaintiff Mohammad Chowdhury worked at that Domino's from March until June of 2020, helping run the store through the worst of the pandemic.

5.      Defendants took advantage of Mr. Chowdhury's strong work ethic and his desire to help his borough out during its crisis.  Defendants stole tips or wages from Mr. Chowdhury every day that he worked for them.  Defendants not only failed to pay Mr. Chowdhury for the hours he worked, they systematically falsified their own records to cover their tracks.

6.      When Mr. Chowdhury objected, the general manager of the store laid hands on Mr. Chowdhury—wrapping his fingers and thumbs around Mr. Chowdhury's neck in a pantomime of strangulation—in an effort to frighten Mr. Chowdhury into silence.

7.      These allegations are described in detail in the Statement of Facts below.

8.      Plaintiff, on behalf of himself and on behalf of all other similarly situated employees and former employees of Domino's franchises owned by Defendants in New York State, brings this lawsuit seeking recovery against Defendants for Defendants' violation of the Fair Labor Standards Act, as amended (the "FLSA"), 29 U.S.C. § 201 et. seq., and alleges that he and all others who opt into this action pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b), are entitled to recover: (i) unpaid wages and unpaid tips, for work performed for which they received less than full compensation; (ii) unpaid overtime wages for overtime work for which they did not receive overtime; (iii) liquidated damages; and (iv) attorneys' fees and costs.

9.     Plaintiff, on his own behalf, brings this lawsuit seeking recovery against Defendants on several other grounds, including under the New York Labor Law, Art. 6, §§ 190 et. seq., and Art. 19, §§ 650 et. seq., and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142 (collectively, "NYLL"), for Defendants' failure to pay tips, wages and overtime wages, and for their failure to provide wage notices and wage statements, and under the FLSA and NYLL for retaliatory discharge in violation of those statutes.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §§ 1331, 1367, and 2201.

11.     This Court has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this District.

13.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

**Defendants**

14.     Defendant RAJA S. ALI ("Ali") is an individual residing at 17 Bailey Ave., Bay Shore, NY 11706.

15.     Upon information and belief, Ali is the 100% owner of Defendant RAJA 786 FOOD INC ("the Corporate Defendant", and, together with Ali, "Defendants"), a New York corporation with offices located at 241 Rockaway Parkway, Brooklyn, NY 11212.

16.     Defendants own and operate a Domino's Pizza franchise located at 241 Rockaway Parkway.

17.     Ali has the authority power to hire, fire and control nearly every working condition of the employees at that Domino's franchise, including Plaintiff and all similarly situated employees.

18.     Upon information and belief, Defendants also own—either directly, or indirectly through other corporations controlled by Defendants—several other Domino's Pizza franchises in and around New York City.  Upon information and belief, all Domino's Pizza franchises owned and operated by Defendants adhere to the same patterns, practices and policies with respect to employee pay.  Upon information and belief, Ali has the authority power to hire, fire and control nearly every working condition of the employees at the all Domino's Pizza franchises that he owns and operates.

19.     At all times relevant to this Complaint, Defendants employed individuals on an hourly basis to oversee and operate their Domino's Pizza franchises, including Assistant Managers and deliverymen.

20.     Upon information and belief, at all times relevant to this Complaint, Defendants' annual gross volume of sales made or business done was not less than approximately $500,000.00.

21.     At all times relevant to this Complaint, the Defendants constituted an "enterprise engaged in commerce" under the FLSA, 29 U.S.C. § 201 et. seq., and were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a) and the NYLL.

22.     Upon information and belief, at all relevant times, Defendants have used goods produced in interstate commerce.

23.     Defendants caused the violations set forth in this Complaint.

**Plaintiff**

24.     Plaintiff MOHAMMAD CHOWDHURY ("Chowdhury") is an individual residing in Brooklyn, New York.

25.     At all relevant times, the work performed by Chowdhury and similarly situated employees was to the benefit of the business operated by Defendants.

26.     At all relevant times, Chowdhury and similarly situated employees worked in interstate commerce as to fall within the protections of the Act.

27.     A written consent form for Chowdhury is attached as **Exhibit A** to this Collective Action Complaint.

## STATEMENT OF FACTS

28.     In March of 2020 Plaintiff Mohammad Chowdhury ("Chowdhury") learned through a friend who worked for Defendants that there was an opening for an Assistant Manager at Defendants' Domino's franchise on Rockaway Parkway in Brooklyn.

29.     Chowdhury had worked at a Domino's franchise in the past and was familiar with the Assistant Manager role.

30.     As an Assistant Manager at a Domino's franchise, he would be asked to do a little bit of everything: customer service, deliveries, general management of the store, whatever was needed.

31.     He would be a Level Two employee and would be paid $16.50 per hour.

32.     The position was non-exempt, and he would be entitled to overtime wages of $24.75 for every hour he worked above forty hours in a given workweek.

33.     Chowdhury was interviewed for the Assistant Manager position by the franchise's General Manager, a man named Soumic Chowdhury ("Defendants' General

Manager"). Although Chowdhury has the same last name as Defendants' General Manager, the two men are not related.

34.    Defendants' General Manager hired our client in mid-March of 2020, just as the pandemic began to devastate Brooklyn.

35.    The pandemic both increased the demand for pizza delivery in Brooklyn, and reduced the available labor pool, and so Chowdhury immediately began to work very long hours. He would typically arrive between 10am and 11am, and would often work until 1am or even 2am. He worked six and occasionally seven day a week.

36.    The job required Chowdhury to be in close contact with many other people, both in the restaurant, while overseeing customer's orders and the preparation of pizzas, and around the borough, when delivering pizzas.

37.    The epidemiology of the coronavirus was only beginning to be understood at the time, but Chowdhury knew that he was placing himself at risk of infection by working.

38.    However, he felt a commitment to his coworkers, to Defendants' business, and to his borough, and he put his shoulder to the wheel. Chowdhury was proud of his small role in helping the city survive the pandemic.

39.    In March, April and May of 2020, Chowdhury was typically working at least 80, and occasionally in excess of 90 hours in a week.

40.    But Defendants quickly made clear that they would not pay Chowdhury all wages he was due.

41.    From the time he was first hired as an Assistant Manager, Defendants' General Manager entered Chowdhury into the payroll system as a delivery driver, not as an Assistant Manager. Defendants' payroll system therefore compensated Chowdhury at $15 per hour, not $16.50 per hour.

42.    Chowdhury had been hired to be an Assistant Manager, not a delivery driver, and he had the responsibilities of an Assistant Manager, not a delivery driver.  Indeed, at one point, Defendants' General Manager asked Chowdhury to "try" doing more deliveries.  Chowdhury did try it, but after several shifts told Defendants' General Manager that, no, he preferred to remain an Assistant Manager.

43.    Defendants' General Manager also made a practice of clocking Chowdhury and other employees out after ten hours of work, even when those employees worked longer.  For example, if an employee had arrived at 10am, at 8pm the General Manager would clock them out, even if they worked until 1am.

44.    Defendants' General Manager told employees that it was very important to him that the payroll system never record more than roughly sixty hours of work in a week for any given employee, no matter how many hours that employee worked.

45.    Upon information and belief, Defendants knew that (i) their General Manager was paying their employees less than their promised hourly wages, and (ii) Defendants were aware that their General Manager was not paying their employees at all for hours worked in excess of sixty hours in a workweek.

46.    Chowdhury objected to these pay practices.  He did so orally, including to Defendants' General Manager.

47.    Defendants' General Manager always had the same answer to Chowdhury's objections: "If you don't like it, you can go."  By this the Defendants' General Manager meant that, if Chowdhury wished to remain employed by Defendants, he would have to accept (i) being paid a base wage of $15 per hour, not the $16.50 per hour normally paid to Assistant Managers, and (ii) not being paid for hours worked in excess of sixty hours per week.

48.   Defendants' General Manager was sometimes apologetic, telling Chowdhury, "I clocked you out after ten hours, I'm sorry."

49.   But Defendants' General Manager was also very clear about why he was doing it, telling Chowdhury:  "My bonus check will not be as big if I pay you overtime."  Later in the spring, Defendants' General Manager also stated that he would get in trouble with Defendants if he continued to pay Chowdhury overtime.

50.   Defendants also stole from their employees in less systematic ways.

51.   Defendants' General Manager would send Chowdhury out to buy lunch for the staff of Defendants' franchise, but would then not reimburse Chowdhury for the $20 or $40 or $80 he spent on food.

52.   Defendants' General Manager would also steal tips. On one occasion, when Chowdhury spent several hours delivering food, Defendants' General Manager announced that he would not pay Chowdhury any of the tips customers had paid that day, because "the system was short," and he, Defendants' General Manager, needed to keep the tips to make it balance.

53.   Defendants attempted to buy silence from Chowdhury and other employees concerning Defendants' improper pay practices.

54.   If a current employee worked in excess of sixty hours in a week, Defendants' General Manager would, on occasion, give that employee a second check, made out in the name of one of Defendants' former employees.  Defendants' expectation was that the current employee would take the falsified check to a check cashing business and cash the check.

55.   Defendants' General Manager issued two such checks to Chowdhury.  He did not cash either improper check.

56.    Chowdhury continued to ask Defendants' General Manager for his full pay. By late spring, Defendants decided to retaliate against Chowdhury for his persistent requests that he receive his full wages, including as owed under the FLSA and NYLL.

57.    In about June of 2020, Defendants' General Manager stopped speaking to Chowdhury.  And, on several occasions, when passing Chowdhury in the restaurant, Defendants' General Manager would turn and silently place his hands around Chowdhury's neck, in a pantomime of strangulation.  Each such instance was an assault.

58.    Defendants' General Manager, when passing Chowdhury in the restaurant, would also slap Chowdhury on the buttocks.  Each such instance was an assault.

59.    Defendants' General Manager assaulted Chowdhury in order to drive home a point:  That Chowdhury was not to object to Defendants' pay practices, that Chowdhury must rather silently submit to abuse or else be fired.

60.    Defendants' General Manager also assaulted other employees.  Upon information and belief, on one occasion, Defendants' General Manager struck one employee in the testicles.

61.    In July of 2020, Defendants' General Manager asked Chowdhury to sign papers certifying that changes made to our client's hours by Defendants' General Manager were accurate.  Chowdhury refused.

62.    Defendants' General Manager told Chowdhury that if he did not want to sign, he should not return to work.

63.    Chowdhury had been fired.

64.    Chowdhury had been fired for engaging the protected conduct, namely, asserting his right to be paid for all hours worked under the FLSA and NYLL.

65.     After his termination, Chowdhury retained counsel to assert his rights under the FLSA

and NYLL.  When Defendants' General Manager learned that Chowdhury had retained counsel,

he came to Chowdhury's house, and repeatedly demanded that Chowdhury's family allow him to

speak with Chowdhury.  Upon information and belief, Defendants' General Manager did so in an

improper effort to threaten Chowdhury not to assert his rights under the FLSA and the NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

66.     Plaintiff seeks to prosecute his FLSA claims as a collective action on behalf of all

persons similarly situated, specifically:   All persons who are employed or were formerly

employed at any Domino's Pizza franchise owned by Defendants from three years before the

filing of the Complaint in this case to the entry of judgment in this case (the "FLSA Collective

Action Period"), who were non-exempt employees within the meaning of the FLSA, and who

were not paid tips, not paid their full wages for all hours worked, and/or who were not paid

overtime for hours worked in excess of forty hours per workweek.

67.     At all relevant times, Plaintiff and the FLSA Collective Action Plaintiffs are and have

been similarly situated, are and have had substantially similar job requirements and pay

provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs,

practices, procedures, protocols, routines, and rules, all culminating in a willful failure and

refusal to pay them the proper tips, wages and overtime wages.

68.     The claims of Plaintiff stated herein are essentially the same as those of the other FLSA

Collective Action Plaintiffs.  Specifically, Plaintiff and the FLSA Collective Action Plaintiffs

claim that Defendants willfully violated Plaintiff's and FLSA Collective Action Plaintiffs' rights.

69.     The claims for relief are properly brought under and maintained as an opt-in collective

action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  The FLSA Collective Action

Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Action Plaintiffs via text, via email, and/or via first class mail to the last email addresses, telephone numbers and residential addresses known to Defendants.

70.     The collective action is so numerous that joinder of all Plaintiffs is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently under the sole control of the Defendants, upon information and belief, there are more than ten Plaintiffs of the collective action who worked for Defendants during the FLSA Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

71.     Plaintiff will fairly and adequately protect the interests of the FLSA Collective Action Plaintiffs and has retained counsel that is experienced and competent in the fields of employment law and collective action litigation. Plaintiff have no interests that are contrary to or in conflict with the FLSA Collective Action Plaintiffs of this action.

72.     The FLSA Collective Action Plaintiffs are similarly situated to Plaintiff in that they are or were denied tips, wages or overtime wages for certain hours worked beyond forty hours in a week.

73.     They are further similarly situated in that Defendants have or had a policy and practice of knowingly and willfully refusing to pay tips, wages and overtime.

74.     They are further similarly situated in that, upon information and belief, Defendants have a policy and practice of failing to provide Plaintiffs with statutorily required notice of wages or statements of their pay received, in part so as to hide Defendants' violations of the wage and

hour laws and to take advantage of their employees' relative lack of sophistication in wage and hour laws.

75.     They are further similarly situated in that, upon information and belief, Defendants have a policy and practice of willfully disregarding and purposefully evading recordkeeping requirements of the FLSA by failing to maintain accurate and complete timesheets and payroll records.

76.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual tips earned and actual number of hours Plaintiff and FLSA Collective Action Plaintiffs worked and to avoid paying Plaintiffs properly.

77.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all Plaintiffs is impracticable.  Furthermore, inasmuch as the damages suffered by individual FLSA Collective Action Plaintiffs might be relatively small, the expense and burden of individual litigation make it virtually impossible for the Plaintiffs of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

78.     Questions of law and fact common to all Plaintiffs predominate over questions that may affect only individual Plaintiffs, because Defendants have acted on grounds generally applicable to all Plaintiffs.  Among the common questions of law and fact common to Plaintiff and the FLSA Collective Action Plaintiffs are:

> a.     whether Defendants employed Plaintiff and the FLSA Collective Action Plaintiffs within the meaning of the FLSA;

b.      whether Defendants failed to provide Plaintiff and the FLSA Collective Action Plaintiffs with a notice of wages explaining each employees' compensation.

c.      whether Defendants failed to keep true and accurate records of all tips earned by Plaintiff and the FLSA Collective Action Plaintiffs;

d.      whether Defendants failed to keep time records for all hours worked by Plaintiff and the FLSA Collective Action Plaintiffs;

e.      what proof of tips and hours worked is sufficient where the employer fails in its duty to maintain records;

f.      whether Defendants failed to pay Plaintiff and the FLSA Collective Action Plaintiffs wages for all hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

g.      whether Defendants' violations of the FLSA are willful as that term is used in the context of the FLSA;

h.      whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interests, costs and disbursements and attorneys' fees; and

i.      whether Defendants should be enjoined from such violations of the FLSA in the future.

79.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

**COUNT I**
**By Plaintiff and Collective Action Plaintiffs under the FLSA**
*Failure to pay wages, overtime wages and tips.*

80.     Plaintiff, on behalf of himself and all Collective Action Plaintiffs, repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

81.     At all relevant times, Defendants employed Plaintiff and each of the Collective Action Plaintiffs within the meaning of the FLSA.

82.     At all relevant times, Defendants had a policy and practice of refusing to pay all wages due, including all overtime wages due, and of refusing to pay all tips earned by all employees. This included:

      a.  Not paying employees at all for certain hours worked.

      b.  Paying employees less, for certain hours worked, than the hourly wage that had been promised to those employees.

      c.  Paying employees, for hours worked in excess of forty hours in a given workweek, less than one-and-one-half times the hourly wage that had been promised to those employees.

      d.  Not paying employees the tips earned by those employees.

83.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

84.     The uncompensated and undercompensated time typically amounted to many hours per week for Plaintiff and each Collective Action Plaintiff.

85.     As a result of Defendants' willful failure to compensate their employees, including Plaintiff and the FLSA Collective Action Plaintiffs, Defendants have violated and continue to violate the FLSA.

86.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

87.     Due to Defendants' FLSA violations, Plaintiff and the Collective Action Plaintiffs are entitled to recover from Defendants their unpaid wages, overtime and tips, and an additional equal amount as liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to the FLSA.

**COUNT II**
**By Plaintiff under the FLSA**
*Retaliation.*

88.     Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

89.     At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

90.     Plaintiff engaged in activity protected by the FLSA, namely, he objected to Defendants' failure to pay him his wages, overtime and tips.

91.     Defendants retaliated against Plaintiff for engaging in that protected activity; specifically, Defendants' General Manager physically assaulted Plaintiff a described above, and ultimately terminated Plaintiff because he objected to Defendants' failure to pay him his wages, overtime and tips.

92.     Due to Defendants' retaliation in violation of the FLSA, Plaintiff is entitled to recover from Defendants compensatory damages for his lost wages and benefits, including front and back wages, as well as for his emotional distress, suffering, pain and humiliation, and damage to his reputation and career, as well as punitive damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to the FLSA.

## COUNT III
### By Plaintiff under the New York Labor Law
*Failure to pay wages, overtime wages and tips.*

93.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

94.    At all relevant times, Plaintiff was employed by Defendants within the meaning of NYLL.

95.    Defendants willfully violated Plaintiff's rights under NYLL including by:

    a.   Not paying Plaintiff at all for certain hours worked.

    b.   Paying Plaintiff less than the hourly wage that had been promised to Plaintiff.

    c.   Paying Plaintiff, for hours worked in excess of forty hours in a given workweek, less than one-and-one-half times the hourly wage that had been promised to Plaintiff.

    d.   Not paying Plaintiff all tips earned by Plaintiff.

96.    Defendants' failure to pay overtime was willful within the meaning of NYLL.

97.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants their unpaid wages, overtime and tips, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to NYLL.

## COUNT IV
### By Plaintiff under the New York Labor Law
*Retaliation*

98.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

99.    At all relevant times, Defendants employed Plaintiff within the meaning of the NYLL.

100.    Plaintiff engaged in activity protected by NYLL, namely, he objected to Defendants' failure to pay him his wages, overtime and tips.

101.    Defendants retaliated against Plaintiff for engaging in that protected activity; specifically, Defendants' General Manager physically assaulted Plaintiff a described above, and ultimately terminated Plaintiff because he objected to Defendants' failure to pay him his wages, overtime and tips.

102.    Due to Defendants' retaliation in violation of NYLL, Plaintiff is entitled to recover from Defendants compensatory damages for his lost wages and benefits, including front and back wages, as well as for his emotional distress, suffering, pain and humiliation, and damage to his reputation and career, as well as punitive damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to NYLL.

### COUNT V
**By Plaintiff under the New York Labor Law**
***Failure to provide accurate wage notices and wage statements.***

103.    Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

104.    At all relevant times, Plaintiff was employed by Defendants within the meaning of NYLL.

105.    Defendants have willfully failed to supply Plaintiff with the notices required pursuant to New York Labor Law § 195 (1).

106.    Defendants have willfully failed to supply Plaintiff with accurate statements of pay with every payment of wages, violating New York Labor Law § 195 (3).

107.    Due to Defendants' violations of New York Labor Law § 195 (1), Plaintiff is entitled to recover from Defendants fifty dollars ($50.00) for each work day that the violations occurred, up to a total of five thousand dollars ($5000.00), as provided for by New York Labor Law § 198(1)-b, plus reasonable attorneys' fees, costs, injunctive and declaratory relief.

108.    Due to Defendants' violations of New York Labor Law 195 (3), Plaintiff is entitled to recover from Defendants two hundred fifty dollars ($250.00) for each work day that the violations occurred, up to a total of five thousand dollars ($5000.00) per employee, as provided for by New York Labor Law §198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

(a)    Enter a declaratory judgment that the acts and practices of Defendants complained of herein are in violation of the laws of the United States and the State of New York;

(b)    Enjoin and permanently restrain the Defendants' violations of the laws of the United States and the State of New York;

(c)    Designation of this action as a collective action on behalf of the Collective Action Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated Plaintiffs of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b), and appointing Plaintiff and his counsel to represent the Collective Action Plaintiffs;

(d)    A compensatory award of unpaid tips, unpaid wages, and unpaid overtime wages due under the FLSA and NYLL;

(e)     An award of liquidated damages as a result of Defendants' willful failure to pay tips, wages and overtime wages pursuant to FLSA and NYLL;

(f)     An award of $5000 to Plaintiff due to Defendants' violations of NYLL §195 (1), as provided for by NYLL § 198(1)-b; and an award of $5000 to Plaintiff due to Defendants' violations of NYLL § 195 (3), as provided for by NYLL §198(1)-d;

(g)     Compensatory and punitive damages, in an amount to be determined at trial, for retaliation under the FLSA and NYLL;

(h)     Judgment for interest (including pre-judgment interest);

(i)     Judgment awarding Plaintiff the costs of this action, together with reasonable attorneys' fees as provided by the FLSA and NYLL; and

(j)     Such other and further relief as to this Court appears necessary and proper.


## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: New York, New York
       August 31, 2020

                        Respectfully Submitted,

                        GRANOVSKY & SUNDARESH PLLC

                        /s/ Benjamin Rudolph Delson
                        Benjamin Rudolph Delson (BD-1724)
                        Alexander Granovsky (AG-6962)
                        48 Wall Street / New York, NY 10005
                        delson@g-s-law.com
                        ag@g-s-law.com
                        (646) 524-6001

                        *Attorneys for Plaintiff Mohammad Chowdhury*

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOHAMMAD CHOWDHURY, on behalf of himself and all other persons similarly situated, | Civil Action No.: |
| *Plaintiff,* | **CONSENT TO BE PARTY PLAINTTIFF** |
| v. | |
| RAJA 786 FOOD INC and RAJA S. ALI, individually, | |
| *Defendants.* | |

MOHAMMAD F. CHOWDHURY states:

1.  I am the plaintiff in the above-captioned action. My address is 709 Foster Ave, Brooklyn NY 11230.

2.  Pursuant to 29 USC §216(b), this action asserts claims under the Fair Labor Standards Act ("FLSA"), 29 USC §201 *et seq.* on behalf of myself and all other employees similarly situated.  Pursuant to 29 USC§§2016(b) and 256, I consent to being a party plaintiff in this action and to the filing and prosecution of the above referenced FLSA claims on my behalf and on behalf of all other employees similarly situated.

Dated:   Sept. 7, 2020
         Brooklyn, New York

_____
Mohammad F. Chowdhury