DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOHAMMED CHOWDHURY, on behalf of himself and all other persons similarly situated, and JEAN PLAISIR, and DARLENE SMITH, individually<br><br>Plaintiffs,<br><br>- against -<br><br>RAJA 786 FOOD INC., ZENAB FOOD INC., SARDAR PIZZA INC., ROCKAWAY 786 FOOD INC., PENNSYLVANIA 786 PIZZA INC., PITKIN AVE 786 PIZZA INC., and RAJA S. ALI,<br><br>Defendants. | Index No. 20-cv-04235 PKC JRC |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Mohammed Chowdhury, Jean Plaisir, and Darlene Smith (collectively, "the Named Plaintiffs"), individually and on behalf of all non-exempt persons who are employed or were formerly employed at any Domino's Pizza franchise owned by Defendants in New York City from April 2019 to the entry of judgment in this case (the "Plaintiffs"), and Raja 786 Food, Inc., Zenab Food Inc., Sardar Pizza, Inc., Rockaway 786 Food, Inc., Pennsylvania 786 Pizza, Inc., Pitkin Ave 786 Pizza Inc., and Raja S. Ali (collectively, "Defendants") (the Plaintiffs and Defendants are referred to herein as the "Parties").

## RECITALS

**WHEREAS**, the Plaintiffs have asserted a variety of claims against Defendants including claims for failure to pay minimum wages, overtime wages and misappropriation of tips, in alleged violation of the New York Labor Law and its ancillary regulations ("NYLL") and in alleged violation of the Fair Labor Standards Act ("FLSA"); and

**WHEREAS**, the Plaintiffs have also asserted claims that Defendants have violated the New York City Fair Workweek Law, NYC Admin. Code §§ 20-1201-1275- ("NYC FWWL"); and

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

**WHEREAS**, Named Plaintiffs Mohammed Chowdhury, Jean Plaisir and Darlene Smith have also alleged individual claims under the above statutes; and Plaintiff Chowdhury has alleged individual claims under New York City Human Rights Law ("NYCHRL"); and

**WHEREAS**, Pursuant to the Court's orders dated March 25 and April 9, 2021, notice of a collective action was sent to Defendants' employees, and pursuant to this notice ten individuals in addition to Mr. Chowdhury filed consent to join forms to become plaintiffs in this Action, a list of such employees being included herein at Section 3.3(ii); and

**WHEREAS**, on November 17, 2021, the Parties participated in a mediation session of this matter in New York, New York, which was conducted by experienced mediator Krista Gottlieb, Esq.; and

**WHEREAS**, the Parties also participated in settlement conferences before Magistrate Judge James Cho of the Federal District Court for the Eastern District of New York on March 25, 2022, April 20, 2022, and May 26, 2022; and

**WHEREAS**, the Parties have reached an agreement to settle fully and finally all claims asserted by Plaintiffs and those claims that could have been asserted, and to record the terms of that agreement in this Settlement Agreement and Release;

**WHEREAS**, Plaintiffs' Counsel (defined below) analyzed and evaluated the merits of the claims made against Defendants, conducted interviews with Plaintiffs and numerous other employees of Defendants, obtained and reviewed documents relating to Defendants' compensation policies and practices, the manner in which Defendants operates its restaurants, researched law relating to the FLSA, NYLL and NYC FWWL claims, potential defenses and exemptions, and the various methods for calculating damages, and analyzed payroll data and time records, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that, if not settled now, the claims might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs and Class Members (as defined below); and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the asserted claims on the following terms and conditions.

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1** **"Agreement"** means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

**1.2** **"Court"** means the United States District Court for the Eastern District of New York.

**1.3** **"Class Member"** means any person employed by Defendants as non-exempt employees during the Class Period. For the avoidance of doubt: all eleven Opt-Ins (as defined below) are Class Members; and store managers are not Class Members.

**1.4** **"Class Period"** means April 22, 2019 through the date of final approval of the Final Approval Order (as defined below).

**1.5** **"Defendants"** means Raja 786 Food, Inc., Zenab Food Inc., Sardar Pizza, Inc., Rockaway 786 Food, Inc., Pennsylvania 786 Pizza, Inc., Pitkin Ave 786 Pizza Inc., and Raja S. Ali.

**1.6** **"Gross Settlement Amount"** means $800,000.00, which is the maximum amount that Defendants have agreed to pay to fully resolve and settle Plaintiffs' and the Class Members' FLSA, NYLL, NYC FWWL and NYC HRL claims, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to Class Members; and any Court-approved Service Awards. The Gross Settlement Amount does not include the costs of retaining the Settlement Administrator, nor Defendants' share of Employer Payroll Taxes resulting from the Settlement, both of which shall be paid by Defendants in addition to the Gross Settlement Amount.

**1.7** **"Net Settlement Fund"** means the remainder of the Gross Settlement Amount after deductions/payments/reversions for Court-approved Plaintiffs' Counsel's attorneys' fees and costs.

**1.8** **"Employer Payroll Taxes"** means all taxes and withholdings Defendants are required to make arising out of or based upon the payment of employment/wage compensation resulting from this settlement, including FICA, FUTA, and SUTA obligations.

**1.9** **"Defendants' Counsel"** means Littler Mendelson, P.C. and Martin Silver P.C.

**1.10** **"Plaintiffs' Counsel"** means Granovsky & Sundaresh PLLC.

**1.11** **"Effective Date"** means the date on which this Agreement becomes effective, which shall mean the later of (i) 31 days following the Court's Order Granting Final Approval of the Agreement if no appeal is taken of such Order, or (ii) the Court's entry of a final order and judgment approving the settlement after any appeals are fully and finally resolved.

**1.12** **"Last Known Address"** means the most recently recorded personal mailing address for a Class Member as shown in Defendants' records.

**1.13** "**Opt-Ins**" mean the eleven individuals that have filed a consent to join form to become a party plaintiff in this lawsuit. A complete list of the Opt-ins is included herein at Section 3.3(ii).

**1.14** **"Order Granting Final Approval of Settlement" or "Final Approval Order"** means an order to be approved and entered by the Court, which approves the Settlement and this Agreement, and enters final judgment, in a form substantially similar to the Proposed Approval Order and Judgment Approving Settlement, attached hereto as Exhibit D.

**1.15** **"Qualified Settlement Fund" or "QSF"** means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Defendants. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's order(s). Interest, if any, earned on any monies in the QSF will not become part of the Net Settlement Fund, and will revert to Defendants.

**1.16** **"Releasees"** means Defendants and its past, present, and future owners, officers, directors, shareholders, employees, agents, representatives, insurers, successors, predecessors, affiliates, parents, subsidiaries, attorneys, and other related entities. Releasees does not include Domino's Pizza, Inc., nor other Domino's Pizza franchises not explicitly covered by this Agreement.

**1.17** **"Settlement"** means the resolution of the claims raised by Plaintiffs on the terms and conditions set forth in this Agreement.

**1.18** **"Settlement Administrator"** means ^ Simpluris, subject to Court approval.

**1.19** **"Wage and Hour Settlement"** means the settlement of claims asserting that Plaintiffs are owed unpaid minimum wages and overtime compensation and that Defendants allegedly misappropriated tips belonging to Plaintiffs and the Opt-Ins. The total gross value of the Wage and Hour Settlement is $70,000, which shall come out of and is a part and is a component of the Gross Settlement Fund. Only Opt-Ins shall be entitled to receive a share of the funds

set aside for the Wage and Hour Settlement, and only the Opt-Ins will release their wage and hour claims under the NYLL and FLSA.

**1.20** **"Named Plaintiff Settlements"** means the settlement of claims asserted individually by Plaintiffs Chowdhury, Plaisir and Smith, including all claims under FLSA, NYLL or NYC HRL, and including all claims of retaliation under any statute, and including all claims of assault or sexual harassment asserted by Plaintiff Chowdhury under any statute. The total gross value of the Named Plaintiff Settlements is $110,000.00, which shall come out of and is a part and is a component of the Gross Settlement Fund. Of this amount, $100,000 shall be allocated to Plaintiff Chowdhury, $5,000 shall be allocated to Plaintiff Plaisir, and $5,000 shall be allocated to Smith, Only Plaintiffs Chowdhury, Plaisir and Smith will sign general releases of all claims.

**1.21** **"NYC FWWL Settlement"** means the settlement of claims asserting that Defendants violated the NYC FWWL, NYC Admin. Code §§ 20-1201-1275. The total gross value of the NYC FWWL Settlement is $375,000.00, which shall come out of and is a part and is a component of the Gross Settlement Fund. All Class Members shall be entitled to receive a share of the funds set aside for the NYC FWWL Settlement, and each Class Member will release their NYC FWWL claims against Defendants.

**1.22** **"Individual Settlement Amount"** means each Class Member's proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.23** **"Individual Settlement Check"** means the check issued to each Qualified Claimant for his or her proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.24** **"Settlement Notice"** means the document entitled Notice of Settlement to be approved by the Court in a form substantially similar to Exhibit B, attached hereto. A separate Settlement Notice, to be distributed to the eleven Opt-Ins, is attached as Exhibit C.

**1.25** **"Order Granting Preliminary Approval of Settlement" or "Preliminary Approval Order"** means an order to be approved and entered by the Court, which preliminarily approves the Settlement and this Agreement, in a form substantially similar to the Proposed Preliminary Approval Order, attached hereto as Exhibit A.

## 2. APPROVAL AND NOTICE TO CLASS MEMBERS

**2.1** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the claims raised by Plaintiffs and the released claims set forth herein.

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

**2.2** Upon Court approval, the parties shall retain the Settlement Administrator. The Settlement Administrator will be responsible for establishing a QSF account; preparing (including translating into Bengali) and mailing, emailing and texting the Settlement Notice and reminders to Class Members as described below; calculating the Individual Settlement Amounts for each Class Member; preparing and mailing Individual Settlement Checks; distributing any approved Service Award and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; maintaining a telephone number to receive calls from Class Members and addressing their inquiries, including updating their contact information; retaining and providing a copy of the Opt-Out Forms and Individual Settlement Checks signed by Class Members to Plaintiffs' and Defendants' Counsel; and providing regular status reports to counsel for the Parties.

**2.3** Plaintiffs shall file a Motion for Preliminary Approval of the Proposed Class and Collective Action Settlement ("Preliminary Approval Motion"). Defendants shall have had an opportunity to review and provide comments to the Preliminary Approval Motion prior to its filing and Defendants will provide such comments within seven (7) days of receiving the draft Preliminary Approval Motion from Plaintiffs' Counsel. Provided that Plaintiffs incorporate all comments proposed by Defendants, Defendants shall not oppose the motion. With the Preliminary Approval Motion, Plaintiffs' Counsel also will file this Agreement and the attached Preliminary Approval Order and Settlement Notices and Opt-Out Forms, attached hereto as Exhibits A, B, and C, respectively. Among other things, the Preliminary Approval Motion will ask the Court to: (i) issue and enter the Preliminary Approval Order approving the Settlement as fair, adequate, and reasonable, (ii) approve the proposed Settlement Notices and Opt-Out Forms to be sent to Class Members and Opt-Ins, (iii) authorize the Settlement Administrator to perform the necessary duties to administer the Agreement, and (iv) schedule a final approval hearing.

**2.4** Within fourteen (14) days after the Preliminary Approval Order is entered, Defendants shall give the Settlement Administrator and Plaintiffs' Counsel a list of all Class Members' names, Last Known Addresses, e-mail addresses, beginning and ending dates of employment (if available), total hours worked for Defendants (if available), total earnings (if available), telephone numbers if reasonably retrievable, and the last four (4) digits of each Class Member's social security number ("Class List"). The Settlement Administrator shall review the Class List and exclude from the Class List any individual whose employment lasted less than two weeks, or whose employment is of indeterminate length but whose total earnings were less than $300, or for whom no social security information is available.

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

**2.5** Settlement Notices disclosing the approximate Individual Settlement Amount for each Class Member, and the mechanism for opting out, will be mailed to Class Members, via First Class United States mail by the Settlement Administrator within twenty-one (21) days after the entry of the Preliminary Approval Order. If practicable (within the sole discretion of the Settlement Administrator), the Settlement Notices may identify the times by Individual Settlement Checks may be mailed; and the Settlement Notices will identify the means by which a Class Member may update his or her contact information with the Settlement Administrator. To the extent email addresses for Class Members are known to Defendants, the Settlement Administrator shall also email identical notice to those Class Members, in a form substantially similar to Exhibit B-1. The Settlement Notices shall also inform Class Members of their right to submit an objection to the settlement and of their right to opt-out of the settlement. Objections and requests to opt-out must be submitted within forty-five (45) days of the mailing of the Settlement Notices. Before mailing the Settlement Notice to Class Members, the Settlement Administrator will perform a skip trace on all Class Members' addresses to obtain the most current address for each Class Member.

2.5(a): The eleven Opt Ins, all of whom are also Class Members, shall receive a second and distinct Settlement Notice, alerting them to such terms of the settlement as apply to the Opt-Ins alone. The Parties shall confer with the Settlement Administrator to ensure the Opt-Ins receive their distinct notice.

**2.6** As to any Class Members for whom the Settlement Notice are returned as undeliverable, the Settlement Administrator shall (i) perform one skip trace to obtain the correct addresses for such Class Members, including using the last four (4) digits of social security numbers to obtain address information for Class Members and shall attempt re-mailings; and (ii) shall send a text message, in a form substantially similar to Exhibit B-1 to each such Class Member whose telephone number is known to Defendants, alerting the Class Member that they may be entitled to compensation pursuant to a Class Action Settlement and alerting them to the phone number provided for in Section 2.2.

**2.7** The Settlement Administrator will periodically update Plaintiffs' Counsel and Defendants' Counsel regarding returned mailings for which it is unable to obtain corrected addresses, and Opt-Out Forms and Objections it has received.

**2.8** In the event that the Court fails to finally approve this Agreement, or the Court's approval of the Agreement is reversed on appeal, the Agreement will be void and the Parties (a) may attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a modified settlement and agreement

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

and/or (b) any or all Parties may seek reconsideration or appellate review of the decision denying approval of the Agreement. In the event reconsideration and/or appellate review is denied, the Parties are unable or choose not to negotiate a modification to the Settlement, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Parties shall be restored to the positions they were in before entering into this Agreement, and nothing in this Agreement may be used against any party.

## 3. SETTLEMENT TERMS

### 3.1 Settlement Payments

i. Defendants shall pay all fees and costs associated with retaining the Settlement Administrator.

ii. Defendants shall fully fund the QSF as follows:

(a) $257,838.00 shall be funded by November 15, 2022.

(b) $542,162.00 shall be funded by June 30, 2023.

iii. The funds shall remain in the Qualified Settlement Fund and shall not be distributed by the Settlement Administrator to any person unless and until the Court grants final approval of the settlement. If the Court does not grant final approval, or if the order granting final approval is reversed on appeal, then the funds shall be returned to Defendants upon Defendants' request.

iv. The Gross Settlement Amount shall fully and finally resolve and satisfy: any and all amounts to be paid to the Individual Plaintiffs, the Opt-Ins and Class Members, any Court-approved Service Award as more fully set forth herein; any approved claim for Plaintiffs' Counsel's fees and costs; and any other costs and expenses resulting from the Settlement, not including Defendants' own attorneys' fees, costs and expenses, nor the Settlement Administrator's fees and costs. Defendants shall pay any Employer Payroll Taxes due as a result of any Settlement payments in addition to the Gross Settlement Amount.

v. ***First,*** upon the later of five (5) days of the Effective Date and five (5) days after the first installment of $257,838.00 are deposited in the QSF, the Settlement Administrator shall begin distributing the money in the QSF as follows: :

(a) Paying the Wage and Hour Settlement to all Opt-Ins;

(b) Paying the Named Plaintiff Settlements to Plaintiffs Chowdhury, Plaisir and Smith; and

(c) Paying Plaintiffs' Counsel's an initial payment of $77,838 in Court-approved attorneys' fees and costs, as described in Section 3.2.

***Second,*** upon the later of five (5) days of the Effective Date and five (5) days after the second installment of $542,162.00 in funds are deposited in full into the QSF:

(a) Paying all Class Members in accordance with the allocation formula set forth below; and; and

(b) Paying Plaintiffs' Counsel's a second payment of $162,162 in Court-approved attorneys' fees and costs, as described in Section 3.2.

vi. The Settlement Administrator shall send reminder postcards via First Class U.S. Mail within sixty (60) days after the initial distribution of checks to Opt-Ins and Class Members, who have not cashed their Individual Settlement Checks reminding them to cash their checks prior to the 90-day deadline.

vii. Class Members, Opt-Ins, and the Named Plaintiffs shall have 90 days following the mailing of the Individual Settlement Checks to cash their settlement checks.

(a) Any check sent as part of the Wage And Hour Settlement or the Named Plaintiff Settlement that is not cashed within 90 days shall revert back to Defendants.

(b) Any check sent as part of the NYC FWW Settlement that is not cashed within 90 days shall revert back to Defendants.

**3.2 Settlement Amounts Payable as Attorneys' Fees and Costs.**

i. In their Final Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of up to $240,000.00 from the Gross Settlement Amount as an award of attorneys' fees. In addition, Plaintiffs' Counsel shall seek reimbursement of $5,000.00 as reasonable actual case-related costs and expenses from the Gross Settlement Amount.

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

ii. The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Final Approval Motion. In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder. Any payment for attorneys' fees or costs that is not approved by the Court shall remain in the Net Settlement Fund and be returned to Defendants.

iii. The parties agree that, of the $240,000, the following fractions may be considered attributable to the prosecution of the following causes of action$162,162 shall be allocated as attorney's fees with respect to the NYC FWWL Settlement; and $77,838 shall be allocated as attorneys fees with respect to the Wage and Hour Settlement and the Named Plaintiff Settlements.

**3.3 Distribution of Payments to Class Members.**

i. <u>**NYC FWWL Settlement**</u>

(a) Payments to Class Members will be made from the Gross Settlement Fund. The Individual Settlement Amount for each Class Member shall be determined as follows:

1. Each Class Member who has not opted out shall be assigned a number of "points" equal to (as best as can be determined based on a review of each Class Member's W2s or pay records or other business record maintained by any of the Defendants) that Class Member's non-tip income from April 22, 2019 to December 31, 2021. The calculation of all points pursuant to this paragraph shall be based on Defendants' business records, and shall be determined by Defendants following their good-faith review of Defendants' own records. Defendants will disclose their calculation to counsel for the Plaintiffs, who shall have seven days to comment. Should counsel for Plaintiffs or any Class Member dispute their allocated points, the Parties shall meet

and confer in good faith, but Defendants shall be the ultimate arbiter of the allocated point total to each Class Member.

2. To calculate each Class Member's Individual Settlement Payment:

A) Add all points for all Class Members who have not opted out together to obtain the "Total Denominator;"

B) Divide the number of points for each Class Member by the Total Denominator to obtain each Class Member's "Portion of the NYC FWWL Settlement Fund."

C) Multiply each Class Member's Portion of the NYC FWWL Settlement Fund by $375,000.00, which is the amount of the Gross Settlement Fund Allocated to the NYC FWWL Settlement to determine each Class Member's Individual Settlement Payment.

D) The sum of the Individual Settlement Amounts for all Class Members shall equal $375,000.00, which is the amount of the Gross Settlement Fund Allocated to the NYC FWWL Settlement. The Individual Settlement Amounts shall be disclosed, to the best extent practicable, to Class Members in their Settlement Notice.

ii. **<u>Wage and Hour Settlement</u>**

(a) Payments to Opt Ins will be made from the Gross Settlement Fund. The Wage and Hour Settlement Amount shall be $70,000.00 and shall be paid to the eleven Opt Ins as follows:.

1. Laura Castillo: $5,616.04

2. Mohammed Chowdhury: $13,213.85

3. Michelle Gordon: $13,953.10

4. Tazul Islam: $1,000.00

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

5. Mohammed Jamrud: $8,285.54

6. Sabbir H. Mizu: $100.00

7. Paul Okfeler: $7,053.46

8. Jean Plaisir: $4,000.00

9. Naquana Presley: $1,000.00

10. Mohammed Salim: $100.00

11. Darlene Smith: $15,678.01

(b) For the avoidance of doubt, because each of the eleven Opt Ins are also Class Members, each Opt In will receive both the Wage and Hour Settlement Amounts provided above, and the Individual Settlement Amount provided in Section 3.3(i).

iii. Named Plaintiff Settlements

(a) Payments to the Named Plaintiffs will be made from the Gross Settlement Fund. The Named Plaintiff Settlement Amount shall total $110,000 and shall be paid as follows:.

1. Mohammed Chowdhury: $100,000.00, of which $20,000 represents settlement of Mr. Chowdhury's claim for economic losses stemming from alleged wrongful termination, and of which $80,000 represents settlement of Mr. Chowdhury's claim for pain and suffering stemming from the alleged sexual harassment.

2. Jean Plaisir: $5,000.00;

3. Darlene Smith: $5,000.00.

(b) For the avoidance of doubt, because each of the three Named Plaintiffs are also Opt Ins and Class Members, each of the three Named Plaintiffs will receive the above settlements as well as the Wage and Hour Settlement Amounts and the Individual Settlement Amount provided in Sections 3.3(i) and 3.3(ii).

(c) The above settlement amounts are provided in exchange for the general releases that the three Named Plaintiffs

alone will provide to Defendants and the Releasees. However, the Parties agree that, for purposes of obtaining the Court's approval of this settlement, all of the Named Plaintiff Settlement payments to Plaintiffs Plaisir and Smith, as well as $5,000 of the payment to Plaintiff Chowdhury, may be in the alternative be considered by the Court as in the nature of service awards.

iv. Payroll Tax Responsibility and Tax Characterization of Payments.

(a) For tax purposes:

1. 20% of the Individual Settlement Amount paid to Mohammed Chowdhury pursuant to this Agreement shall be treated as back wages, and 80% of such payment shall be treated as damages for pain, suffering and emotional distress.

2. 50% of all other payments to the Class Members, Opt Ins and the Named Plaintiffs pursuant to this Agreement shall be treated as back wages, and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages, and other non-wage relief.

(b) Defendants' share of payroll taxes shall be paid separately and in addition to the Gross Settlement Fund. The Settlement Administrator shall advise Defendants of the Employer Payroll Taxes Due, and Defendants shall remit such amount to the Settlement Administrator for payment on behalf of the QSF within fourteen (14) business days of receiving notice of the amount due from the Settlement Administrator.

(c) Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.

(d) Payments treated as a Service Award, interest, penalties, liquidated damages, and other non-wage relief, including Mr. Chowdhury's payments for pain and suffering, shall be

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099.

(e) The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and issuing IRS W-2 and 1099 Forms. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and to Plaintiffs' Counsel under the payee's name and taxpayer identification number, which Plaintiffs' Counsel shall provide for this purpose, on an IRS Form 1099.

(f) The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Class Member, Opt-In or Named Plaintiff receiving an Individual Settlement Check and/or Service Award, except that normal withholdings will be made from the W-2 portion of the Settlement Checks. The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments or the payment of any costs or award of attorneys' fees. The Settlement Notice will advise Class Members to seek their own tax advice prior to acting in response to that Settlement Notice. Neither Plaintiffs' Counsel nor Defendants' Counsel intends anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

## 4. RELEASE OF CLAIMS

**4.1** Class Members who do not submit an opt-out statement/request, shall release against Releasees any and all claims under the NYC FWWL and/or NYC Admin. Code §§ 20-1201-1263 relating back to the full extent of the state or local statute of limitations and continuing through the date of the Court's Final Approval Order, including, without limitations, any and all state or local claims for unpaid premium wages due under NYC FWWL and/or NYC Admin. Code §§ 20-1201-1275, and related claims for interest, attorneys' fees, costs, and expenses.

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

**4.2** Opt-Ins who sign and deposit their Individual Settlement Check, shall release against Releasees any and all claims, under FLSA or NYLL that accrued during their employment with Defendants relating back to the full extent of the federal, state or local statute of limitations and continuing through the date of the Court's Final Approval Order, and that concern unpaid wages, remuneration, tip misappropriation, notice and record keeping claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

**4.3** Release by the Named Plaintiffs: Mohammed Chowdhury, Jean Plaisir and Darlene Smith shall additionally waive, release and discharge Releasees from all demands, claims and actions, whether known or unknown, relating to their employment or termination of employment with Defendants, through the date the respective Named Plaintiffs sign this Agreement. The Named Plaintiffs are not waiving any rights that they may have to: (a) their own vested accrued employee benefits under Defendants' health, welfare, or retirement benefit plans as of their termination date; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; and/or (d) enforce this Agreement. Nothing in this Agreement prohibits or prevents the Named Plaintiffs from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.). However, to the maximum extent permitted by law, the Named Plaintiffs agree that if such an administrative claim is made, they shall not be entitled to recover any individual monetary relief or other individual remedies.

## 5. PARTIES' AUTHORITY

**5.1** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 6. MUTUAL COOPERATION

**6.1** The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

soon as practicable after execution of this Agreement, and in accordance with its terms, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendants and its counsel, take all necessary steps to secure the Court's approval of this Agreement. Defendants shall be entitled to review and suggest changes to the motions for preliminary and final approval of the settlement, and Plaintiffs shall consider those proposed revisions in good faith.

**7. NOTICES**

**7.1** Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs, Opt-Ins, and/or Class Members:

Rudolph Delson, Esq.
Granovsky & Sundaresh PLLC
48 Wall Street, 11th Floor
New York, NY 10005
T: 646.524.6001
F: 646.417.5500
delson@g-s-law.com

To Defendants:

Eli Freedberg, Esq.
Littler Mendelson, P.C.
900 Third Avenue
New York, NY 10022
(212) 583-2685
(212) 832-2719
Efreedberg@littler.com

**8. NO ADMISSION OF LIABILITY**

**8.1** Defendants deny all of the allegations made by Plaintiffs in the litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Defendants shall not oppose the conditional nor final certification of a class or collective action in this matter, but do not concede the appropriateness of said certifications. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the litigation on the terms and

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

## 9. INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

**9.1** Further Acts. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. Plaintiffs' Counsel shall be responsible for preparing all court filings necessary to obtain court approval of the settlement.

**9.2** No Assignment. Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the litigation, or any related action, and any attempt to do so shall be of no force or effect.

**9.3** Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**9.4** Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Defendants, its affiliates, parents, subsidiaries, predecessors, successors, employees and agents; and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, successors and assigns.

**9.5** Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated. Plaintiffs acknowledges that they are represented by, and have consulted with, legal counsel in connection with this Agreement.

**9.6** Captions. The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**9.7** Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**9.8** Governing Law. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**9.9** Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**9.10** Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**9.11** Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**9.12** Should the Court decline to approve the settlement, the Parties shall meet and confer to resolve any issues raised by the Court, but agree to keep the material terms of this Agreement to the maximum extent possible.

**9.13** Defendants shall have had an opportunity to review and provide comments to the Final Approval Motion prior to its filing and Defendants will provide such comments within seven (7) days of receiving the draft Final Approval Motion from Plaintiffs' Counsel.

**9.14** Plaintiffs' Counsel has identified all of their clients that they represent and Plaintiffs' Counsel affirms that they do not represent any other of Defendants' employees who have not opted-in to this lawsuit beyond those identified in the settlement term sheet.

**9.15** CAFA notices: The Settlement Administrator will prepare and send any necessary notices to state or federal authorities regarding the Agreement and class action.

**9.16** Facsimile and E-mail Signatures. Any party may execute this Agreement by personally or electronically signing on the designated signature block below and transmitting that signature page via facsimile or e-mail to counsel for the other party. Any signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**WE AGREE TO THE TERMS OF THIS SETTLEMENT AGREEMENT AND RELEASE.**

**PLAINTIFFS:**

**Date:** 8/2/2022

DocuSigned by:
92BA76164367435...

**Mohammed Chowdhury**

**Date:** 7/29/2022

DocuSigned by:
CC823FE65D6147A...

**Jean Plaisir**

**Date:** 7/29/2022

DocuSigned by: Darlene Smith
DF66BA6575C64AF...

**Darlene Smith**

**Date:** 7/29/2022

DocuSigned by: Benjamin Rudolph Delson
B3DA22EC62DB41C...

**GRANOVSKY & SUNDARESH PLLC**
**(as for Section 9.14 only)**

**DEFENDANTS:**

DocuSign Envelope ID: 6C310863-BCB0-4624-B416-5A4FA9DEEE81

Date: Raja Ali
Raja S. Ali

Date: Raja Ali
Raja 786 Food, Inc.
By 7/29/22, its President

Date: Raja Ali
Zenab Food Inc.
By 7/29/22, its President

Date: Raja Ali
Sardar Pizza, Inc.
By 7/29/22, its President

Date: Raja Ali
Rockaway 786 Food, Inc.
By 7/29/22, its President

Date: Raja Ali
Pennsylvania 786 Pizza, Inc.
By 7/29/22, its President

Date: Raja Ali
Pitkin Ave 786 Pizza Inc.
By 7/29/22, its President